Wayne C. NEWLAND, Plaintiff,

v.

Captain ACHUTE, R/R Captain of C74, Correction Department C74 Building A.R.D.C., and the Montefiore Medical Center, Defendants.

No. 92 Civ. 0547 (JGK).

United States District Court, S.D. New York.

June 24, 1996.

Wayne Newland, Brooklyn, NY, pro se.

Ann L. Moscow, Assistant Corporation Counsel, City of New York, New York City, for Defendants.

## OPINION AND ORDER

KOELTL, District Judge:

The plaintiff Wayne C. Newland, a former inmate at the Adolescent Reception Detention Center ("ARDC"), brings this action pursuant to 42 U.S.C. § 1983 against the defendants Captain William Achute and the Montefiore Medical Center ("Montefiore"). The plaintiff alleges that Captain Achute used excessive force and that an employee of Montefiore denied him adequate medical treatment in violation of his Eighth Amendment rights. The defendants now move for summary judgment dismissing all of the plaintiff's claims against them.

I.

The amended complaint alleges two claims: (1) on December 18, 1991, the defendants were deliberately indifferent to the plaintiff's serious medical needs, and (2) on December 18, 1991, the defendants subjected the plaintiff to excessive force.

Newland claims that during his incarceration by the Department of Correction and prior to December 18, 1991, he underwent extensive medical examinations and mental evaluations by the prison health services of St. Vincent's Hospital, Medical Center of New York, and Montefiore in connection with longstanding and serious medical conditions, including asthma, hypertension, hepatitis B & C, cardiac irregularities, and depression and anxiety. (Pl.'s 3(g) ¶ 1; Newland Aff. ¶ 5.)

On December 18, 1991, Newland was incarcerated at the ARDC, Rikers Island, Elmhurst, NY, awaiting sentencing after having entered a plead of guilty in New York State Supreme Court, New York County, to the crime of criminal possession of stolen property. (Defs.' 3(g) ¶ 1.) ARDC had an order from New York Supreme Court that required that the plaintiff be produced in court on December 18, 1991 for his sentencing. (Defs.' 3(g) ¶ 2.)

On the morning of December 18, 1991, Newland reported to correction officers at ARDC that he was having an asthma attack and was, therefore, medically unable to go to court. (Defs.' 3(g) ¶ 3.) Newland alleges that he was having chest pains and nausea and breathing difficulties, and that these symptoms were consistent with his longstanding medical history of hypertension, asthma or cardiac irregularities. (Pl.'s 3(g) ¶ 2; Newland Aff. ¶ 6.) A correction officer escorted Newland to the Montefiore facility at ARDC to be examined to determine whether he was too ill to go to court. (Defs.' 3(g) ¶ 4.)

Dr. Donald Dayson, a physician employed by Montefiore, examined and observed Newland. (Defs.' 3(g) ¶ 5; Dayson Decl. ¶¶ 5, 8, 9.) Newland claims that he told Dr. Dayson that he was nauseous and was having chest pains, that he had a history of asthma and might be having an attack, and that his medi-

cal records indicated prior treatment for asthma and hypertension and previously prescribed medications for these ailments. (Newland Aff. ¶ 9.) Dr. Dayson took Newland's pulse, examined his throat and eyes, and administered a peak flow test. (Pl.'s 3(g) ¶ 11.) It is undisputed that Dr. Dayson did not consult the plaintiff's medical records during his examination of Newland. (Defs.' 3(g) ¶ 13; Dayson Decl. ¶ 15.) The defendants claim that Newland's medical records were not immediately available because this was not a scheduled clinic visit. (Defs.' 3(g) ¶ 13; Dayson Decl. ¶ 15.) The defendants argue that the plaintiff's medical records were unnecessary in any event because these records would not have aided in the determination of whether the plaintiff was having an asthma attack. (Defs.' 3(g) ¶ 15; Dayson Decl. ¶ 15.) Newland claims that a review of his medical chart was an essential component of any medical examination of his symptoms, especially because Dr. Dayson was unfamiliar with Newland's medical history. (Pl.'s 3(g) ¶¶ 4, 6.) Newland claims that Dr. Dayson performed a rushed examination and only examined him for asthma, even though his records indicated that he should be examined for hypertension and cardiac irregularities. (Pl.'s 3(g) ¶ 5.)

After examining Newland, Dr. Dayson concluded that there was no evidence that Newland was having an asthma attack and that therefore there was no medical reason why he could not go to court that morning. (Defs.' 3(g) ¶ 11; Dayson Decl. ¶ 16.) Accordingly, Dr. Dayson released Newland from the medical clinic to go to court. (Defs.' 3(g) ¶ 12; Dayson Decl. ¶ 16.) Newland continued to complain that he was too sick to go to court. (Defs.' 3(g) ¶ 16; Newland Aff. ¶ 13.)

Because Newland refused to go to court, defendant Captain William Achute ("Captain Achute") directed four correction officers to handcuff Newland so that he could be placed on a bus for transport to court. (Defs.' 3(g) ¶ 17.) Newland claims that although he told Captain Achute and the correction officers that he was too sick to go to court, Captain Achute told the officers "just take him." (Newland Aff. ¶ 15; Newland Dep. at 49–50.)

Newland claims that he was physically attacked by four correction officers in full protective riot gear wielding shields and batons. He alleges that these officers wrestled him to the floor, hit him with their batons, handcuffed him, and forcibly dragged him out of the facility onto a waiting bus. (Pl.'s 3(g) ¶ 10.) Newland claims that as a result of this incident he suffered visible and long-standing injuries to his head, ear, back, and shoulder. (Pl.'s 3(g) ¶ 11.) The defendants claim that the four correction officers forcibly handcuffed Newland without using excessive force. (Defs.' 3(g) ¶ 18; Dayson Decl. ¶ 20.) Dr. Dayson observed this incident. (Dayson Decl. ¶¶ 17–20.) Newland alleges that even though the officers' beating resulted in visible wounds to his head, neither Dr. Dayson nor any of the officers provided medical treatment to determine the extent of his wounds. (Newland Aff. ¶¶ 19, 20.)

After the incident, the plaintiff was transported to court, where he was sentenced. (Defs.' 3(g) ¶ 20.) While Dr. Dayson observed the handcuffing by the four officers, he denies that he observed any unnecessary or inappropriate use of force. (Dayson Decl. ¶ 24.)

Newland alleges that when he returned to ARDC after his sentencing, he requested medical attention because he was having problems with his head and ears but that his request was unheeded. (Newland Aff. ¶ 24.) The defendants contend that Newland did not advise any correction officers or medical personnel that he needed medical treatment and that he did not ask for any medical attention. (Defs.' 3(g) ¶ 21.) Between December 21 and December 30, 1991, Newland was seen by medical staff at ARDC on at least two occasions. The parties dispute whether Newland reported any injuries on these occasions. (Defs.' 3(g) ¶ 22; Newland Aff. ¶¶ 25, 26.) At the end of December 1991, Newland was given a thorough medical examination at Downstate Correctional Facility, and in the beginning of January 1991, Newland was again examined at Collins Correctional Facility. The defendants claim that Newland did not indicate that he had any current health care complaints and did not report that he had been injured. (Defs.' 3(g)

¶¶ 24, 25.) Newland claims that he told the doctor at Collins that he had pain and clicking sounds in his right shoulder. (Newland Aff. ¶ 28.)

## II.

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994). "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether their are factual issues to be tried." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Because the plaintiff appears *pro se,* the complaint, "however inartfully pleaded," must be held to less stringent standards than formal pleadings drafted by lawyers. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292,

50 L.Ed.2d 251 (1976); *Patrick v. LeFevre,* 745 F.2d 153, 160 (2d Cir.1984).

## III.

Section 1983 imposes civil liability on any person who, acting under the color of state law, abridges rights secured by the United States Constitution or by federal law. 42 U.S.C. § 1983 [1]. There is no dispute in this case that the defendants' alleged actions arose under color of state law. The only issue is whether these actions deprived the plaintiff of his constitutional rights. The plaintiff alleges two separate violations of his Eighth Amendment rights. First, he claims that he was not given proper medical treatment on December 18, 1991. Second, he alleges that correction officers used excessive force against him.

The Eighth Amendment, made applicable to the States by the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishment upon prison inmates. *Farmer v. Brennan,* 511 U.S. 825, ——, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994); *Robinson v. California,* 370 U.S. 660, 666, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962) (the Eighth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment); *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied sub nom. Foote v. Hathaway,* —— U.S. ——, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). The plaintiff's burden in proving an Eighth Amendment violation consists of both an objective and subjective element. The plaintiff must demonstrate that the alleged deprivation is sufficiently serious under an objective standard and that the charged prison officials acted with a sufficiently culpable state of mind. *Farmer,* 511 U.S. at ——, 114 S.Ct. at 1977; *see Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 999–1000, 117 L.Ed.2d 156 (1992); *Hathaway v. Coughlin,* 37 F.3d 63, 66–67 (2d Cir.1994). The Eighth Amendment requires that the medical need to which the correctional officials are alleged to be

---

1. Title 42 U.S.C. § 1983 provides:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

indifferent be objectively "serious." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir.1996). In addition, the deliberate indifference element requires that the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Branham v. Meachum,* 77 F.3d 626, 631 (2d Cir.1996) (quoting *Hathaway,* 37 F.3d at 66).

## A.

The plaintiff first alleges that the defendants violated his Eighth Amendment right to proper medical treatment. The plaintiff actually makes two separate claims under the Eighth Amendment concerning the denial of proper medical treatment. The first is based on Dr. Dayson's examination of him on December 18, 1991 to determine whether he was too sick to go to court that day. The second is based on the incident that occurred subsequently when Dr. Dayson allegedly saw correction officers beat the plaintiff but failed to provide the plaintiff with medical treatment for the injuries he allegedly suffered as a result of this beating. For the reasons that follow, the defendants' motion for summary judgment is granted with respect to the first claim but denied with respect to the second.

■ In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that deliberate indifference to an inmate's serious medical needs fell within the scope of the Eighth Amendment's prohibition. *Id.* at 104, 97 S.Ct. at 291; *Hathaway,* 37 F.3d at 66. The Court determined that such behavior amounted to the "unnecessary and wanton infliction of pain" that comported with the traditional understanding of what the Eighth Amendment proscribed. *Id.* at 104, 97 S.Ct. at 291. Under *Estelle,* prison officials violate the Eighth Amendment if they are deliberately indifferent to an inmate's serious medical needs by denying or delaying his access to medical care or by intentionally interfering with his treatment. *Id.* at 104–05, 97 S.Ct. at 291–92. Allegations of merely negligent treatment or of misdiagnosis fail to meet this standard. *Id.* at 106, 97 S.Ct. at 292; *Hathaway,* 37 F.3d at 68 (citing *Estelle* ). Thus, when a

plaintiff's allegations constitute at most medical malpractice, summary judgment dismissing the claim is appropriate. *See Bryant v. Maffucci,* 923 F.2d 979, 984 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (citing *Estelle* ).

■ Here, the plaintiff asserts that Dr. Dayson did not give him proper medical treatment on December 18, 1991 because Dr. Dayson did not consult the plaintiff's medical records. It is undisputed that Newland told Dr. Dayson that he had a history of asthma, and that Dr. Dayson performed a series of tests, including a peak flow test, to test the plaintiff's breathing. Dr. Dayson claims that this examination did not reveal that Newland was suffering from an asthma attack. At the very most Newland has alleged that Dr. Dayson misdiagnosed him on December 18, 1991. Newland was given prompt medical attention, and Dr. Dayson exercised his medical judgment in determining that Newland was not too sick to go to court. Because Newland has failed to proffer any evidence that Dr. Dayson was deliberately indifferent to his medical needs when he examined him on December 18, 1991, the plaintiff's claim that his Eighth Amendment rights were violated when Dr. Dayson conducted this examination without medical records is granted.

■ The defendants' motion for summary judgment dismissing the second prong of the plaintiff's Eighth Amendment claim alleging improper medical treatment, however, must be denied. The plaintiff claims that Captain Achute and Dr. Dayson watched the correction officers beat him with batons but failed to provide the plaintiff with medical treatment to determine the extent of his injuries. Newland claims that he suffered visible and long-standing injuries to the head, ear, back, and shoulder. The plaintiff has satisfied both the objective and subjective burdens for an Eighth Amendment claim to survive a summary judgment motion. The plaintiff claims that he was visibly and permanently injured as a result of this beating, but that the defendants did not provide him with medical care for these injuries. In addition, the plaintiff claims that when he was returned to Rikers Island at night on December 18, 1991, he requested medical treatment

for the injuries he suffered at the hands of the correctional officers but did not receive it. If at trial the finder of fact credits the plaintiff's version of the December 18, 1991 incident, the finder of fact could conclude that the plaintiff has proven that he had a serious medical need and that the defendants were deliberately indifferent to this need. *See Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir.1994) (denying defendants' motion to dismiss plaintiff's Eighth Amendment claim alleging that defendants ignored his complaints of pain and delayed medical treatment for injuries caused by shackles). Whether the defendants ignored his medical needs, as Newland claims, or whether Newland has not fairly described what happened, rests on disputed issues of fact that cannot be resolved on a motion for summary judgment. Accordingly, the defendants' motion for summary judgment dismissing the plaintiff's claim alleging a violation of his Eighth Amendment rights based on the alleged December 18, 1991 beating is denied.

### B.

 The plaintiff also claims that the defendants violated his Eighth Amendment right to be free from the use of excessive force. To allege an excessive force claim under the Eighth Amendment, the plaintiff must allege that (1) the use of force was objectively harmful enough to represent a constitutional violation, and (2) the official or officials exerting such force acted with a sufficiently culpable state of mind. *Hudson,* 503 U.S. at 8, 112 S.Ct. at 999–1000. A sufficiently culpable state of mind for an Eighth Amendment claim alleging the excessive use of force turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)); *Hudson,* 503 U.S. at 6, 112 S.Ct. at 998–99; *Davidson,* 32 F.3d at 29.

 Here, factual issues preclude summary judgment. The parties have vastly different accounts about what happened on December 18, 1991. The defendants claim that the correctional officers used a minimal amount of force to place handcuffs on Newland to transport him to court. Newland, on the other hand, alleges that even though he told the correction officers and Captain Achute that he was too sick to go to court, Captain Achute told the officers "just take him." Newland claims that four guards, who were wearing full protective riot gear and were wielding shields and batons, wrestled him to the floor and handcuffed him. He alleges that while he was on the floor with his arms and legs pinned down, and while the guards had their knees on him, the guards hit him with their sticks and then forcibly dragged him out of the facility onto a waiting bus. Newland also alleges that Dr. Dayson observed this entire incident without interfering. If the plaintiff's allegations are credited at trial, the finder of fact could conclude that the plaintiff has demonstrated both an objectively excessive use of force and that the defendants sanctioned this use of force with a sufficiently culpable state of mind. These factual disputes cannot be resolved on a motion for summary judgment. Accordingly, the defendants' motion for summary judgment dismissing the plaintiff's Eighth Amendment claim based on the excessive use of force is denied.

### CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment dismissing the plaintiff's claim alleging the use of excessive force in violation of the Eighth Amendment is **DENIED;** the defendants' motion for summary judgment dismissing the plaintiff's claim alleging that his Eighth Amendment rights were violated based on Dr. Dayson's examination on December 18, 1991 is **GRANTED;** and the defendants' motion for summary judgment dismissing the plaintiff's claim that the defendants violated his Eighth Amendment right to proper medical treatment by failing to provide him with medical treatment after he was allegedly beaten on December 18, 1991 is **DENIED.**

**SO ORDERED.**