Derry RUFFIN, Plaintiff,

v.

Jose DEPERIO, M.D. and Romeo
Punzal, M.D., Defendants.

No. 95–CV–1043H.

United States District Court,
W.D. New York.

March 30, 2000.

John T. Kolaga, Jaeckle, Fleischmann & Mugel, Buffalo, NY, John T. Kolaga, Buchanan Ingersoll P.C., Buffalo, NY, for Plaintiff.

Joseph F. Reina, Attorney General of State of N.Y., Buffalo, NY, Ralph Visano, N.Y.S. Attorney General's Office, Buffalo, NY, Kim S. Murphy, Assistant Attorney General, Buffalo, NY, for Defendants.

## ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct any and all further proceedings in this case, including the entry of final judgment, in accordance with 28 U.S.C. § 636(c) (Item 16).

Presently before me is the plaintiff's motion for summary judgment (Items 75–1 and 75–2), the defendants' cross-motion for summary judgment (Item 79–1), and plaintiff's motion to reinstate claims against the State of New York and the Department of Correctional Services *nunc pro tunc* (Item 92–1). For the following reasons, plaintiff's motions for summary judgment and to reinstate claims *nunc pro tunc* are denied. Further, defendants' cross-motion for summary judgment is denied as to the Eighth Amendment claim against the defendants in their individual capacities, but is granted as to the both the Eighth Amendment claim against the defendants in their official capacities and the pendent claims. Further, plaintiff may have forty-five days from the date of this Order to file his negligence and medical malpractice

claims in the New York State Court of Claims.

## BACKGROUND

The following facts are undisputed. Plaintiff, Derry Ruffin, is an inmate incarcerated in the custody of the New York State Department of Correctional Services ("DOCS") (Item 81, ¶ 1, Item 88, ¶ 1). In March of 1994, while incarcerated at Wende Correctional Facility ("Wende"), plaintiff, who suffers from a variety of serious health problems including but not limited to diabetes and hypertension, was injured when a table fell on his left foot (*Id.* at ¶ 6, *Id.* at ¶ 6). Plaintiff subsequently advised the medical staff at Wende that he was continuing to experience pain and swelling in his left foot (*Id.* at ¶ 9, *Id.* at ¶ 9). On March 30, 1994, Dr. Punzal ordered x-rays of plaintiff's left foot and ankle which were found to be negative for fractures (*Id.* at ¶ 14, *Id.* at ¶ 14).

Throughout the period between March 30 and August 17, 1994, plaintiff was regularly seen by several members of the Wende medical staff, including the defendants, for medical problems including continued pain and swelling of his foot (*Id.* at ¶¶ 14–22, *Id.* at ¶¶ 14–22). On August 17, 1994, because of the continuing problems with his foot, plaintiff was referred for an appointment with a neurologist at the Erie County Medical Center ("ECMC") (*Id.* at ¶ 22, *Id.* at ¶ 22). As a result of that consultation in September 1994, EMG and Doppler diagnostic tests were ordered (*Id.* at ¶ 23, *Id.* at ¶ 23). Plaintiff continued to be seen frequently by the defendants and other members of the medical staff throughout the remainder of 1994 (*Id.* at ¶¶ 23–28, *Id.* at ¶¶ 23–28). On December 9, 1994, plaintiff was admitted to the infirmary at Wende (*Id.* at ¶ 28, *Id.* at ¶ 28). On December 16, 1994, plaintiff was admitted to ECMC by an ECMC neurologist for a femoral/peroneal bypass (*Id.* at ¶ 28, *Id.* at ¶ 28).

Plaintiff was confined, either at the infirmary at Wende or at ECMC, throughout the majority of January, February, March, and April of 1995 (*Id.* at ¶¶ 28–37, *Id.* at ¶¶ 28–37). Plaintiff underwent further surgical procedures at ECMC in June and July of 1995, which resulted in the amputation of several toes and part of plaintiff's left foot (*Id.* at ¶¶ 38–44, *Id.* at ¶¶ 38–44). In January 1996, plaintiff was transferred to another correctional facility (*Id.* at ¶ 56, *Id.* at ¶ 56).

Plaintiff filed the instant action pursuant to 42 U.S.C. § 1983 on December 13, 1995. Plaintiff filed a motion to amend the complaint on February 28, 1997 (Item 24). Plaintiff filed a second amended complaint (Item 29) on March 20, 1997. He filed a third amended complaint (Item 47) on August 20, 1997. The third amended complaint (Item 47) alleges that the defendants were deliberately indifferent to plaintiff's serious medical needs, and that their failure to properly treat plaintiff's diabetes and foot injury led to the amputation of plaintiff's left leg below the knee. Plaintiff further alleges pendent state law claims for negligence and medical malpractice.[1]

Plaintiff has filed a motion for summary judgment (Item 75) alleging that the defendants' failure to provide proper medical treatment for plaintiff violated his Eighth Amendment right to be free from cruel and unusual punishment as a matter of law. Also, defendants have filed a cross-motion for summary judgment (Item 79), arguing that plaintiff failed to establish the necessary deliberate indifference to sustain an Eighth Amendment claim, that this court lacks subject matter jurisdiction over plaintiff's pendent claims, and that the defendants are entitled to qualified immunity. Defendants filed a response (Item 89)

---

1. Plaintiff's allegations against former defendants Goord and Irvin were dismissed by Stipulation and Order of February 9, 1999 (Item 71). His claims against former defen-dants State of New York and Wende Correctional Facility were dismissed by Stipulation and Order of March 22, 1999 (Item 73).

to plaintiff's summary judgment motion. Plaintiff also filed a response (Item 87) to defendants' cross-motion for summary judgment and a motion for an order permitting reinstatement of plaintiff's claims against the State of New York and the Department of Correctional Services *nunc pro tunc* (Item 92). Defendants have filed a response to plaintiff's motion (Item 95). Oral argument was conducted before me on February 3, 2000.

## *DISCUSSION*

### I. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 166–67 (2d Cir.1991). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. 2505; *see Bryant v. Maffucci,* 923 F.2d 979 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Maffucci, supra* (citing *Matsushita Electric Industrial Co. v. Ze-*

*nith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### II. The Eighth Amendment Claim Against the Defendants in their Individual Capacities

Plaintiff claims that the defendants' failure to provide him with adequate medical treatment violated his Eighth Amendment right to be free from cruel and unusual punishment. The prohibition against cruel and unusual punishment includes an inmate's right to adequate medical care. *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hathaway v. Coughlin,* 37 F.3d 63 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). In order to establish a violation of the right to adequate medical care, the plaintiff must satisfy a two-part test.

The first part of the test is objective and requires the plaintiff to show that the alleged deprivation is "sufficiently serious." *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970 (quoting *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). In other words, plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* This includes not only conditions affecting plaintiff's current health problems, but also those that are "sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney,* 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). According to the Second Circuit, this standard contemplates " 'a condition of urgency, one that might produce death, degeneration, or extreme pain.' " *Hathaway,* 37 F.3d at 66 (quoting *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting)).

The second prong of the test is subjective and requires the plaintiff to show that the official had a "sufficiently culpable state of mind." *Wilson,* 501 U.S. at 297, 111 S.Ct. 2321, quoted in *Farmer,*

511 U.S. at 834, 114 S.Ct. 1970. Plaintiff must establish that the official acted or failed to act with deliberate indifference to the inmate's health or safety. As stated by the Second Circuit:

> [A] prison official does not act in a deliberately indifferent manner in violation of the Eighth Amendment unless that official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Hathaway,* 37 F.3d at 66 (quoting *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970). "Mere negligence in providing medical treatment or differences of opinion as to matters of medical judgment do not give rise to an Eighth Amendment claim." *Muhammad v. Francis,* 1996 WL 657922 at *5 (S.D.N.Y. November 13, 1996) (citing *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (to the effect that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment")); *Hathaway,* 37 F.3d at 66 (citing *Farmer,* 511 U.S. at 825, 114 S.Ct. 1970 (deliberate indifference "requires more than negligence but less than conduct undertaken for the very purpose of causing harm")). Likewise, an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998). Lastly, it is clear that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Rather, the alleged conduct "must be repugnant to the conscience of mankind" or "incompatible with evolving standards of decency that mark the progress of a ma-turing society." *Id.,* at 102, 105, 97 S.Ct. 285.

## A. Objective Element

A serious medical need has been defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Johnson v. Busby,* 953 F.2d 349, 351 (8th Cir.1991); *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Todaro v. Ward,* 431 F.Supp. 1129 (S.D.N.Y.), *aff'd,* 565 F.2d 48 (2d Cir.1977). In *Chance,* the Second Circuit held that when determining whether a medical condition is serious, among the factors that "are highly relevant to the inquiry" are the "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's normal activities; or the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702–03 (internal quotation marks omitted).

Defendants argue that plaintiff's claim that a table fell on his foot, resulting in pain and swelling, is not sufficient to meet the objective standard (Item 80, pp. 5–6). Defendants further argue that I should reject plaintiff's "attempt[ ] to bootstrap subsequent amputations to his left foot" to his claim (*Id.* at p. 6). Although I find defendants' attempt to isolate the damage caused by the initial injury from its ultimate outcome to be artificial, I nevertheless find that, even looking solely at the initial injury, plaintiff has shown a sufficiently serious medical need.

In *Baumann v. Walsh,* 36 F.Supp.2d 508, 511–12 (N.D.N.Y.1999), the court found that an injury to plaintiff's elbow caused by two falls met the serious medical need requirement. In a factual pattern that contains many similarities to the case at bar, the plaintiff in *Baumann* was seen

by medical personnel on numerous occasions because of elbow pain, a fact which the court noted indicated a pattern of persistent pain and discomfort. *Id.* Further, the prison medical records in *Baumann,* like plaintiff's in this matter (*see* Item 75, Exhibit C), showed that the plaintiff continually complained of "severe" pain, and that medical personnel labeled his condition as "degenerative." *Id.* Lastly, the plaintiff in *Baumann,* like plaintiff here, did not suffer any fractures or dislocations as a result of the injury. *Id.* I find that there is no meaningful difference between the severity of injury caused by falling on an elbow and the injury caused by dropping a table on a foot. The Eighth Amendment does not limit the serious injury requirement to fractures and dislocations, but "instead permits the injury to focus on levels of pain and degeneration." *Id.* (citing *Chance,* 143 F.3d at 702; *Hathaway,* 37 F.3d at 67).

Moreover, plaintiff meets each of the three *Chance* factors. First, plaintiff's voluminous medical records (Item 75, Exhibit C), indicate that the medical staff at Wende found plaintiff's condition worthy of comment. Numerous medical personnel saw plaintiff and his medical records are replete with reference to his foot injury (Item 75, Exhibit C). Second, both plaintiff's and defendants' evidence suggests that plaintiff's foot injury affected his ability to engage in his normal work and other daily activities. On March 29, 1994, defendant Dr. Punzal ordered restrictions on plaintiff's work and recreation for 30 days (Item 81 ¶ 11). Further, plaintiff's medical records are laden with evidence of the medical staff's observations of plaintiff's difficulty walking (Item 75, Exhibit C). Lastly, plaintiff has alleged and complained of severe and persistent pain (*Id.*).

In any event, as stated above, I find the fact that plaintiff ultimately had a portion of his left foot amputated to be extremely relevant to the determination of whether plaintiff meets the objective element. In *Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir.1996), while finding that the deprivation of eye-glasses was sufficient to meet the objective element, the Second Circuit particularly noted that the plaintiff needed the eye-glasses because of vision problems which resulted from a prior head injury. *Id.* It does not strain credulity to suggest that the deprivation of eye-glasses in *Koehl* might not have met the requirement of "suffering" if the plaintiff's preexisting medical problems were not so serious. At the time that the table fell on plaintiff's foot, he had already been diagnosed with a variety of serious medical problems including Diabetes Mellitus, Essential Hypertension, Lyme Disease, Lumbar Disc Disease, Rheumatoid Arthritis, and several other medical conditions (Item 75, Exhibit G, Item 80 p. 2). The objective test asks, in part, whether a layperson would recognize the seriousness of plaintiff's injury. Diabetes is a common medical condition. A reasonable layperson could certainly conclude, in light of plaintiff's extensive medical history and the well-documented concerns about injuries to diabetics, particularly injuries to their extremities, that a table falling on plaintiff's foot would result in potentially more severe injuries to him than it would in an otherwise healthy individual.

Therefore, I conclude that plaintiff has sufficiently shown an objectively serious medical need and thereby satisfies the first element of his Eighth Amendment claim against the defendants in their individual capacities.

## B. Subjective Element

The subjective element is satisfied if the defendants acted with a "sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834–35, 114 S.Ct. 1970 (citations omitted). Plaintiff must prove that the defendants "kn[ew] of and disregard[ed] an excessive risk to [his] health or safety." *Id.* The standard for deliberate indifference equates to that of criminal recklessness. *Id.* at 836–40, 114 S.Ct. 1970.

Plaintiff argues that defendants' conduct was so egregious as to constitute deliberate indifference as a matter of law (Item 76). Defendants argue that, because plaintiff received medical care, the defendants were not deliberately indifferent to his serious medical needs (Item 80). Defendants further argue that, at most, plaintiff's allegations amount to a claim for medical malpractice which is not cognizable under the Eighth Amendment (*Id.*).

■ Defendants claim that plaintiff's medical records show that they were not deliberately indifferent to plaintiff's medical needs because he was frequently examined by the defendants and eventually referred to outside specialists. However, the mere fact that plaintiff was frequently examined by the defendants and eventually referred to outside specialists is insufficient when, as in the instant case, the "course of treatment was largely ineffective." *Hathaway*, 37 F.3d at 68 (rejecting general practitioner's argument that he should be exempt from being found deliberately indifferent because he eventually referred plaintiff to a specialist and examined plaintiff frequently); *see also Hemmings v. Gorczyk*, 134 F.3d 104, 108–09 (2d Cir.1998) (prison medical staff's failure to diagnose classic symptoms of a ruptured Achilles tendon may be sufficient to satisfy deliberate indifference standard, even though prison medical staff did not deny him treatment and eventually referred prisoner to an outside specialist); *Hudak v. Miller*, 28 F.Supp.2d 827, 832 (S.D.N.Y. 1998), (plaintiff's claim that defendant failed to provide him with adequate medical treatment by wrongly diagnosing his chronic headaches as tension headaches rather than a brain aneurysm was sufficient to survive summary judgment where

plaintiff showed that the treatment provided by defendant over a nine-month period was ineffective, the plaintiff had no particular claims of stress or tension, and the defendant understood that the headaches were not typical migraines).

■ Defendants claim that plaintiff was provided with medical treatment. After a thorough examination of plaintiff's medical records, the deposition testimony of the parties, and the report of plaintiff's expert witness (Item 75, Exhibits C, D, E, F, and G),[2] I find that a reasonable jury could conclude that the defendants' "treatment" of plaintiff consisted of little more than documenting his worsening condition (Item 75, Exhibit G, p. 5), and continuing the provision of ineffective medications and methods of glycerin control. *See Evans v. Dugger*, 908 F.2d 801, 806 n. 8 (11th Cir. 1990) ("Deliberate indifference can be evidenced in many ways.... You may find evidence of deliberate indifference if you find that the health care ... actually provided was so cursory to amount to no care at all."). Several courts have defined indifference as "apathy or unconcern," *Rellergert v. Cape Girardeau County, Mo.*, 924 F.2d 794, 797 (8th Cir.1991). Plaintiff here has shown that the defendants' actions displayed a sufficient degree of apathy to his serious medical needs so as to survive summary judgment (Item 75, Exhibit G, p. 5). *See Doe v. Taylor Independent School District*, 15 F.3d 443 (5th Cir.1994) (school principal's apathy in failing to respond to or adequately investigate reports that a teacher was sexually involved with a student was sufficient to show deliberate indifference particularly when the failure to take appropriate action prolonged the violation of plaintiff's rights); *LaFaut v.*

**2.** Dr. Michotek notes that with regard to plaintiff's diabetes management, "he had poor preventative care, poor glucose control, poor follow-up of high sugars," with regard to the evaluation, treatment, and follow-up of his foot injury, "[the treatment] was delayed and approached in an apathetic manner. There were delays at every level of management ... many things could have been done for Mr.

Ruffin rather than just document his foot pain." Item 75, Exhibit G, p. 5. Further, defendant's expert, Dr. Curl, acknowledges that the defendants' did not "immediately appreciate" the seriousness and nature of plaintiff's foot injury and that other aspects of his care were "not consistent with exemplary care." Item 75, Exhibit H, pp. 1–2.

*Smith*, 834 F.2d 389, 394 (4th Cir.1987) (prison official's apathy in addressing needs of handicapped prisoner sufficient to show deliberate indifference); *Rouse v. Bolden*, 36 F.Supp.2d 204, 205 (S.D.N.Y. 1999) (allegations that an employer conducted a *"pro forma* investigation [of allegations of sexual harassment], one largely intended to create a paper record, but not intended as a meaningful remedial inquiry" sufficient to survive summary judgment).

The defendants' attempts to characterize plaintiff's allegations as mere negligence or disagreement over a course of treatment are unpersuasive. Plaintiff does not argue that he requested a specific type of medical care and was refused. Rather, he argues that the defendants' failure to act on his repeated complaints of pain, swelling, difficulty in walking, inability to sleep due to foot pain, and blackening of his toes, particularly when combined with glycerin levels which were regularly three to five times the normal level between March and December of 1994 (Item 80, pp. 9–13), all of which are obvious symptoms of serious medical problems in a diabetic, constitutes deliberate indifference to his serious medical needs. In any event, certain instances of medical malpractice may rise to the level of deliberate indifference. *Farmer*, 511 U.S. at 842, 114 S.Ct. 1970 ("a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious"); *Hudak*, 28 F.Supp.2d at 831 ("Evidence that the risk [to plaintiff] was obvious may suffice to allow a factfinder to infer actual knowledge from that obviousness."). A defendant may not escape liability if the evidence shows that he "merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Farmer*, 511 U.S. at 843 n. 8, 114 S.Ct. 1970; *see also Youngberg v. Romeo*, 457 U.S. 307, 323, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (allegations suggesting that the doctor's conduct was "a substantial departure from accepted professional judgment, practice or standards" is sufficient to support a deliberate indifference claim); *Hudak*, 28 F.Supp.2d at 831 ("Thus, if the evidence shows that the risk of serious medical problems was so obvious that a reasonable factfinder could infer actual knowledge of them on [the defendants'] part, this Court must deny summary judgment."). Based on the evidence available, I conclude that a reasonable jury could find that the defendants' conduct was a substantial departure from accepted professional judgment and that the evidence of risk was sufficiently obvious to infer the defendants' actual knowledge of a substantial risk to plaintiff.

Therefore, I conclude that plaintiff has sufficiently shown that the defendants were deliberately indifferent to his serious medical need and thereby satisfies the second element of his Eighth Amendment claim against the defendants in their individual capacities.

Plaintiff claims that the defendants' actions and/or inactions, constitute deliberate indifference as a matter of law. Although the evidence provided by plaintiff is persuasive, it cannot erase the issues of fact that exist here. Defendants in their deposition testimony (Item 75, Exhibits D and E) and in their affidavits (Items 82, 83, and 96) insist that they provided plaintiff with all necessary and appropriate medical treatment. Further, defendants' medical expert has provided an affidavit (Item 75, Exhibit H) stating that an earlier diagnosis of plaintiff's foot injury would not have changed the eventual outcome. A reasonable jury could conclude from all the evidence that, given the difficulties of treating individuals with multiple medical problems and the limitations inherent in providing treatment in a prison setting, the defendants treated plaintiff in an adequate manner. Lastly, defendants claim that plaintiff's noncompliance with his diabetic regimen was a significant factor in the amputations. Plaintiff vigorously contests this allega-

tion. Evidence of a prisoner's noncompliance with a medical regimen is sufficient to defeat plaintiff's motion for summary judgment. *See Brown v. Selwin,* 1999 WL 756404 at *6 (S.D.N.Y. September 24, 1999) (granting summary judgment to defendants where the uncontroverted evidence showed that plaintiff's on-going medical problems were caused by his refusal to allow doctors to remove a stent previously placed in his ureter); *Abdush–Shahid v. Coughlin,* 933 F.Supp. 168, 180 (N.D.N.Y.1996) (plaintiff's removal from a special diet was not deliberate indifference where plaintiff had refused to eat the special meals); *Ross v. Kelly,* 784 F.Supp. 35, 46–47 (W.D.N.Y.) (evidence failed to establish deliberate indifference to medical needs where plaintiff was largely to blame for many of the delays in his treatment due to his second-guessing of physician's advice and refusal of treatment), *aff'd,* 970 F.2d 896 (2d Cir.), *cert. denied,* 506 U.S. 1040, 113 S.Ct. 828, 121 L.Ed.2d 698 (1992). The question of plaintiff's possible noncompliance with his regimen and the effect it may have had on the ultimate outcome in this matter requires credibility determinations, a weighing of the evidence, and the drawing of legitimate inferences from the facts. These are functions for the jury. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

Finally, in this case the issues of liability are necessarily entwined with the issues of damages. Even if plaintiff has demonstrated his entitlement to a liability finding as a matter of law, a trial of many of the same facts will be necessary on the issue of damages.

Therefore, I conclude that plaintiff has failed to show that he is entitled to sum-

mary judgment on his Eighth Amendment claim. His motion is hereby denied.

**C. Qualified Immunity**

I also reject defendants' contentions that they are entitled to summary judgment based upon their qualified immunity. The Second Circuit has held that where factual disputes exist, a court cannot resolve the question of qualified immunity without engaging in some weighing of the evidence, a function that falls within the province of the jury. *Posr v. Doherty,* 944 F.2d 91, 95–96 (2d Cir.1991); *Calamia v. City of New York,* 879 F.2d 1025, 1035–36 (2d Cir.1989). Plaintiff's right to be free from deliberate indifference to his serious medical needs was clearly established at the time of the events in question, and if the jury in this case were to give credence to plaintiff's version of the facts, the jury could well find that defendants knowingly violated that right.

**III. The Pendent State–Law Claims Against the defendants In Their Individual Capacities**

Plaintiff alleges that the defendants were negligent and committed medical malpractice. Defendants argue that plaintiff's pendent claims against the defendants in their individual capacities are barred by § 24 of the New York State Correction Law (Item 80). For the reasons discussed below, I find that the plaintiff's pendent claims against the defendants in their individual capacities are barred by § 24.

Defendants claim that the pendent claims against the defendants in their individual capacities are barred by § 24 of the New York State Correction Law.[3] In *Bak-*

3. Section 24 provides in pertinent part:
 1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his individual capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employer.
 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharged of the duties of any officers or employee of the [Department of Correctional Services] shall be brought and main-

*er v. Coughlin,* 77 F.3d 12, 13–14 (2d Cir. 1996), the Second Circuit found that a plaintiff's pendent state law claims for common law intentional tort, negligence, and medical malpractice were barred by § 24. *Baker,* 77 F.3d at 14–16. The *Baker* Court held that despite the fact that § 24 only refers to actions in state courts, it is applicable to federal court because a federal court acts as a state court when hearing pendent claims. *Id.* at 14. When applying pendent jurisdiction, this court is bound to apply substantive state law to the pendent claim:

> This includes any restrictions set by the state on whether a plaintiff may bring a court action regarding the claim. If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction, standing in the shoes of a state court, must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court.

*Baker* at 15, (quoting *Promisel v. First American Artificial Flowers, Inc.,* 943 F.2d 251, 257 (2d Cir.1991), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992)); *see also Cepeda v. Coughlin,* 128 A.D.2d 995, 513 N.Y.S.2d 528 (N.Y.A.D. 3 Dept.1987). I am bound by the holding in *Baker,* and therefore find that plaintiff's pendent claims against the defendants in their individual capacities are barred by the provisions of § 24.

Therefore, I conclude that § 24 bars the pendent claims against the defendants in their individual capacities. Defendants' motion for summary judgment on the pendent claims against the defendants in their individual capacities is granted.

## IV. The Constitutional and Pendent Claims Against the Defendants in their Official Capacities

The Eleventh Amendment states:

> tained in the court of claims as a claim

The Judicial Power of the United States shall not be constructed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign State.

Plaintiff alleges that the defendants, who are both state actors, are liable in their official capacities for violating his rights under the Eighth Amendment because they were in charge of the medical unit at Wende, and had policy-making authority. He also argues that they are liable in their official capacities for being negligent and committing medical malpractice. However, state defendants are protected by the Eleventh Amendment from legal or equitable claims brought by private parties for alleged constitutional violations. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Yoonessi v. State University of New York,* 862 F.Supp. 1005, 1012 (W.D.N.Y.1994). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Further, the Eleventh Amendment bars suits against states by their own citizens in federal court for the violations of state or federal laws in the absence of waiver by the state or abrogation by Congress. *Welch v. Texas Dept. of Highways and Public Transp.,* 483 U.S. 468, 472, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987); *Phipps v. New York State Department of Labor,* 53 F.Supp.2d 551, 557–58 (N.D.N.Y.1999) (Eleventh Amendment bars plaintiff's state-law tort and Human Rights Law claims); *Pietraszewski v. Buffalo State College,* 1997 WL 436763 at *1 (W.D.N.Y. August 1, 1997) (Eleventh Amendment bars citizens from enforcing state-law claims against the state in federal court); *Cassells v. University Hosp. at Stony Brook,* 740 F.Supp. 143, 147 (E.D.N.Y. 1990) (Eleventh Amendment bars pendent

against the state.

Human Rights Law claims). For the purpose of the Eleventh Amendment analysis, it is irrelevant whether these claims are made against the defendants in their officials capacities, DOCS, or the State of New York. *Pietraszewski,* 1997 WL 436763, at *1 n. 2 (New York State is the real party in interest when a state college or university is sued); *Shimon v. Department of Correctional Services for State of N.Y.,* 1996 WL 15688, at *2 (S.D.N.Y. January 17, 1996) (suit against DOCS' employee in his official capacity is really a suit against the State). Thus, both plaintiff's Eighth Amendment claims against the defendants in their official capacities and his state-law tort claims are barred by the Eleventh Amendment unless, as plaintiff argues, the defendants have waived their immunity.

 As a general rule, "[i]n the absence of an unequivocal waiver specifically applicable to federal-court jurisdiction, we decline to find that [the State] has waived its constitutional immunity." *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Therefore, a federal court should construe a waiver "only where stated 'by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 53 L.Ed. 742 (1909)). Plaintiff bases his waiver argument on Justice Kennedy's concurrence in *Wisconsin Department of Corrections v. Schacht,* 524 U.S. 381, 118 S.Ct. 2047, 2054, 141 L.Ed.2d 364 (1998) (Kennedy, J., concurring), and the Ninth Circuit's decision in *Hill v. Blind Industries and Services of Maryland,* 179 F.3d 754 (9th Cir.1999).

In *Wisconsin Dep't of Corrections,* Justice Kennedy expressed doubt as to the propriety of permitting the State to raise the immunity defense at a late stage in the proceeding,

[i]n permitting the belated assertion of the Eleventh Amendment bar, we allow States to proceed to judgment without facing any real risk of adverse consequences. Should the State prevail, the plaintiff would be bound by the principles of res judicata. If the State were to lose, however, it could void the entire judgment simply by asserting its immunity on appeal.

*Id.* at 2055. Justice Kennedy went on to express his opinion that the Eleventh Amendment is more similar to the personal jurisdiction requirements than to a limit on the federal courts' subject matter jurisdiction. He concluded that a rule "inferring waiver from the failure to raise the objection at the outset of the proceedings, [would prevent the States] from gaining an unfair advantage." *Id.*

In *Hill,* the Ninth Circuit held that the defendant had waived its Eleventh Amendment immunity by waiting until the first day of trial before objecting to the district court's jurisdiction on Eleventh Amendment grounds. *Id.* at 756. The Ninth Circuit noted that the defendants had consented to have the case proceed before a United States Magistrate Judge, conducted discovery, moved to compel discovery and for sanctions, participated in pre-trial conferences, filed trial materials and proposed jury instructions, and filed a trial memorandum without ever raising sovereign immunity as a defense. *Id.* The Court stated that

Such conduct undermines the integrity of the judicial system. It also wastes judicial resources, burdens jurors and witnesses, and imposes substantial costs upon the litigants. In addition, when an Eleventh Amendment defense is first raised late in the case, the record may be inadequate to permit informed appellate review, and the plaintiff may have difficulty obtaining evidence necessary to oppose the motion.

A party may gain an improper advantage through this tactic even without waiting until the first day of trial. The

ruling on a motion for summary judgment, or on pre-trial matters such as motions in limine, can signal the probable outcome of the case. The integrity of the judicial process is undermined if a party, unhappy with the trial court's rulings or anticipating defeat, can unilaterally void the entire proceeding and begin anew in a different forum.

*Id.* at 756–57.

Both Justice Kennedy's concurrence and the decision in *Hill* appear to be at odds with the decisions in other courts which require some affirmative action on the part of the State before finding a waiver of sovereign immunity. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1235–36 (10th Cir.1999) (State waived sovereign immunity by removing case to federal court); *In re Platter*, 140 F.3d 676, 680 (7th Cir.1998) (State waived sovereign immunity by voluntarily filing a claim in federal court); *Paul N. Howard Co. v. Puerto Rico Aqueduct Sewer Auth.*, 744 F.2d 880, 886 (1st Cir.1984) (State waived sovereign immunity by filing a counterclaim and third-party complaint in federal court); *Newfield House, Inc. v. Massachusetts Dep't of Pub. Welfare*, 651 F.2d 32, 36 n. 3 (1st Cir.) (State waived sovereign immunity by removing case to federal court), *cert. denied*, 454 U.S. 1114, 102 S.Ct. 690, 70 L.Ed.2d 653 (1981); *In re Burlington Motor Holdings Inc.*, 242 B.R. 156, 161–62 (Bkrtcy.D.Del. 1999) (Eleventh Amendment did not go to subject matter jurisdiction of the court but was in the nature of an affirmative defense which the States had waived by filing proofs of claim against the estate). Further, the Second Circuit has treated sovereign immunity as a limit on the federal courts' subject-matter jurisdiction rather than as an affirmative defense. *See Atlantic Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir.1993) (Eleventh Amendment immunity can be raised *sua sponte* because it affects subject matter jurisdiction and may be raised at any time during the proceedings). Accordingly, I conclude that the Eleventh Amendment bars the Eighth Amendment and pendent claims against the defendants in their official capacities. Defendants' motion for summary judgment on these claims is granted.

## V. Plaintiff's Motion to Reinstate Claims against the State of New York and the Department of Correctional Services *nunc pro tunc*

Plaintiff requests that he be given leave to reinstate his claims against the State of New York and DOCS *nunc pro tunc*. However, as discussed above, plaintiff's constitutional and pendent claims against the state are barred by the Eleventh Amendment. *Pennhurst*, 465 U.S. at 100, 104 S.Ct. 900; *Pietraszewski*, 1997 WL 436763 at *1. Further, pursuant to § 24 of the New York State Correction Law, plaintiff's negligence and medical malpractice claims must be brought against the State in the Court of Claims. *Baker*, 77 F.3d at 14–16. Plaintiff may have forty-five days from the date of this Order to file his negligence and medical malpractice claims in the New York State Court of Claims.

### CONCLUSION

Plaintiff's motion for summary judgment (Items 75–1 and 75–2) are denied, defendants' cross-motion for summary judgment (Item 79–1) is denied as to the Eighth Amendment claim against the defendants in their individual capacities, and defendants' motion is granted as to Eighth Amendment claims against the defendants in their official capacities and as to the pendent state-law claims. Plaintiff's motion to reinstate claims against the State of New York and the Department of Correctional Services *nunc pro tunc* (Item 92–1) is denied. Plaintiff may have forty-five days from the date of this Order to file his negligence and medical malpractice claims in the New York State Court of Claims.

Pretrial statements in strict compliance with Local Rule 16.1(i) shall be *filed and served* no later than **May 1, 2000.**

A *final pretrial conference* pursuant to Fed.R.Civ.P. 16(d) and Local Rule 16.1(j) will be held on June 12, 2000 at 2:00 p.m. before Judge Schroeder.

**SO ORDERED.**