Edward KOEHL, Plaintiff–Appellant,

v.

Stephen DALSHEIM, Superintendent; Kenley Meritt, Corrections Officer; Frank Averill, Corrections Officer, Defendants–Appellees.

No. 802, Docket 95–2395.

United States Court of Appeals, Second Circuit.

Submitted March 25, 1996.

Decided May 31, 1996.

Edward Koehl, Dannemora, N.Y., submitted a pro se brief.

Dennis C. Vacco, Atty. Gen. of the State of New York, Ronald P. Younkins, Kathleen Murray, Asst. Attys. Gen., New York City, submitted a brief for defendants-appellees.

Before: NEWMAN, Chief Judge, FEINBERG and PARKER, Circuit Judges.

JON O. NEWMAN, Chief Judge:

The large volume of prisoner litigation in federal courts makes it virtually inevitable that a case of arguable merit will occasionally be lumped with the many truly frivolous cases and be dismissed without adequate consideration. There is also a risk that a prisoner's claim will be mischaracterized in a way that makes it seem to be one of the many frivolous cases, rather than one of the few cases of arguable merit. These risks are evident on this *pro se* appeal by Edward Koehl from the June 9, 1995, judgment of the District Court for the Southern District of New York (John S. Martin, Jr., Judge), dismissing, on motion for summary judgment, his suit against New York State corrections officials. Koehl alleged that he was unconstitutionally deprived of his medically prescribed eye-glasses, needed to correct serious vision problems, and has been deprived of needed medical attention for his eye condition. Because his complaint was prematurely dismissed, we reverse in part and remand.

### Facts

Koehl is a New York State prisoner, incarcerated at the Downstate Correctional Facility ("Downstate"). He filed a complaint under 42 U.S.C. § 1983 against Stephen Dalsheim, Superintendent of Downstate, and Kenley Meritt and Frank Averill, both corrections officers at Downstate. Koehl alleged the following events. At the time of his transfer to Downstate, he was subject to routine processing by medical personnel. Koehl produced medical documentation indicating that he needed specially prescribed, tinted eye-glasses, fitted with what he described as a prism, to correct the severe double vision and loss of depth perception that had resulted from a head injury. An attending nurse permitted him to wear his glasses and informed Averill that Koehl had permission to keep his glasses.

The next day, Koehl saw a doctor at Downstate, who wrote him a pass for the glasses. When Koehl returned to the waiting area outside the doctor's office, Meritt and Averill asked him if he had permission to wear the glasses. Koehl produced the doctor's pass and documentation from his previous place of incarceration. Nevertheless, the officers asked the waiting room nurse whether Koehl's file contained any documents permitting him to wear glasses. The nurse was unable to find any documents, apparently because whatever notation the doctor had made in his own records was still in the doctor's office. When Koehl pointed out that the documentation could be obtained from the doctor, Meritt replied, "I don't give a S—t [sic], I'm taking the glasses," and he confiscated them.

The officers then gave Koehl the choice of having his glasses destroyed or sending them to his home. Koehl chose the latter option. When the glasses failed to arrive, he filed an administrative grievance. Koehl also made numerous requests for treatment for his eye condition, but received none.

As a result of the confiscation of his glasses and the subsequent denial of medical treatment, Koehl has suffered significant consequences. His left eye, which had shifted as a result of his head injury, has now shifted fully into the corner of the socket and is almost sightless, and he has experienced headaches.

Koehl's lawsuit sought monetary damages and an injunction to require proper medical treatment. The District Court dismissed the complaint on motion for summary judgment, ruling (1) that Dalsheim had no personal involvement in the matter, (2) that the two officers could not be found to have acted with

deliberate indifference to a serious medical need, and (3) that a due process claim for deprivation of property was defeated by the availability of a remedy in the New York Court of Claims.

## Discussion

### A. Claims against Officers Averill and Meritt

The District Court's dismissal of the Eighth Amendment claims against Officers Averill and Meritt rested on conclusions that the deprivation of Koehl's eye-glasses could not be found to constitute deliberate indifference to "serious medical needs" within the meaning of *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), and that the officers could not be found to have had subjective awareness that deprivation of the eye-glasses would subject Koehl to "a substantial risk of serious harm," *Farmer v. Brennan*, — U.S. —, —, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

■ We disagree with both conclusions. The District Court reached the first conclusion by focusing on the phrase in *Gamble* that refers to an Eighth Amendment violation as the "wanton infliction of pain." *Gamble*, 429 U.S. at 103, 97 S.Ct. at 290 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). However, the point of *Gamble* is that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Id.* at 104, 97 S.Ct. at 290. So long as the medical need to which the corrections officials were deliberately indifferent is "serious," the standard of the Eighth Amendment is violated.

■ Koehl alleged that he required the prescribed eye-glasses to avoid double vision and the loss of depth perception that resulted from a prior head injury. Though these consequences do not inevitably entail pain, they adequately meet the test of "suffering" that *Gamble* recognized is inconsistent with "contemporary standards of decency." *Id.* at 103, 97 S.Ct. at 290. Such visual deficiencies can readily cause a person to fall or walk into objects, and Koehl alleged that he has experienced such occurrences, and has suffered injuries as a consequence. Koehl's medical needs are no less serious than the "lower back strain," *id.* at 107, 97 S.Ct. at 292, at issue in *Gamble*.

■ We also disagree with the District Court's second conclusion that the complaint is insufficient to survive a motion to dismiss for lack of an adequate allegation, as required by *Farmer*, that Averill and Meritt were subjectively aware of Koehl's serious medical needs. From the allegations of this *pro se* complaint, it is not beyond dispute that Koehl will be unable to develop evidence to show that both officers were aware of his serious medical need for the eye-glasses. Koehl alleged that on the day before the confiscation, he was taken to Averill "to continue the search process," that he "produced the required medical documentation that [he] had," and that Averill "checked with" the nurse, who had seen the medical documentation a short time before. Though Koehl is understandably not now aware of exactly what the nurse told Averill and what Averill might have told Meritt, the complaint suffices to warrant discovery to ascertain whether either of the officers were aware of Koehl's serious medical needs. The allegation concerning Meritt's abusive response to the suggestion that the officers should check the records in the doctor's office further supports permitting the claim against him to survive a motion to dismiss.

■ The District Court therefore prematurely dismissed the Eighth Amendment claims against Averill and Meritt. However, the Court properly concluded that the confiscation of Koehl's eye-glasses did not constitute a Fourteenth Amendment violation for loss of property because of the availability of state court post-deprivation remedies. *See Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986).

### B. Claims against Superintendent Dalsheim

■ The monetary claim against Superintendent Dalsheim was properly dismissed.

To the extent that the claim was brought against him in his official capacity, it was barred by sovereign immunity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). To the extent that he was sued in his individual capacity, the claim fails for lack of an allegation of personal involvement. *See Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir.1989).

■ However, the complaint also sought injunctive relief against Dalsheim, and dismissal of that claim was not warranted. As the Superintendent of Downstate, Dalsheim had overall responsibility to ensure that prisoners' basic needs were met, and the complaint adequately alleged deliberate indifference to a serious medical need. Koehl alleged that the medical personnel at Downstate knew that he required his prescribed eye-glasses to correct serious deficiencies, yet failed to respond to his complaint that his glasses had been confiscated and not replaced. He also alleged that he has been denied proper medical attention, including an operation, to repair his deteriorating eye condition. If he can prove his contentions, he may well be entitled to injunctive relief.

It is unfortunate that one sentence of the District Court's eight-page opinion characterized Koehl's suit as claiming that "prison guards wrongfully took away plaintiff's sunglasses." That sentence can easily mislead critics of prisoner litigation into adding Koehl's complaint to their list of what they consider to be frivolous lawsuits.[1] This is not a case about "sunglasses." It concerns corrective eye-glasses medically prescribed to alleviate the significant visual deficiencies of double vision and loss of depth perception. This case, which is by no means frivolous, must be remanded to afford this prisoner an opportunity to develop proof of his Eighth Amendment claims for damages against the officers and for injunctive relief against the Superintendent.

Affirmed in part, reversed in part, and remanded.

---

1. A similar situation arose in a suit by an Ohio prisoner, alleging confiscation of glasses that he alleged had been medically prescribed because he was undergoing ultraviolet ray treatment. *See State of Ohio ex rel. Freeman v. Wilkinson*, No. 92AP–1786 (Ohio Ct.App.1993). The suit, which was ultimately rejected on appeal for failure to file a brief, *id.*, was described by the Ohio Attorney General as a suit in which an "[i]nmate sued for the constitutional right to wear sunglasses," and was characterized by her as her "number one" example of a frivolous lawsuit, *see* Atty. Gen. Betty Montgomery, *News Release* (undated), distributed by National Assn. of Attorneys General, August 1, 1995.