**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2493
_____

WALTER A. TORMASI,
                    Appellant

v.

GEORGE W. HAYMAN, Department of Corrections (DOC) Commissioner; JAMES
BARBO, DOC Director of Division of Operations; MICHELLE RICCI, New Jersey
State Prison (NJSP) Administrator; JEFFREY BELL, NJSP Associate Administrator;
JAMES DRUMM, NJSP Associate Administrator; DONALD MEES, JR., NJSP
Associate Administrator; CHARLES WARREN, NJSP Associate Administrator;
CORRECTIONAL MEDICAL SERVICES INC (CMS); MALAKA UMRANI, CMS
Hospital Administrator; ROBERT A. BUCCHINO, CMS Optometrist; JAMES
BREWIN, CMS Nurse; DARLENE SEXTON, CMS Nurse; KATHLEEN SKINNER,
CMS Nurse; LUCILE ROACH, CMS Nurse; JAWANA BETHEA, CMS Ombudsman;
KATHY O'DONNELL, CMS Ombudsman; PAULA AZARA, CMS Hospital
Administrator; JASON PUGH, CMS Hospital Administrator

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 08-4950)
District Judge:  Honorable Anne E. Thompson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 18, 2011
Before:  AMBRO, FISHER and NYGAARD, Circuit Judges

(Opinion filed November 21, 2011)
_____

OPINION
_____

PER CURIAM

Appellant Walter A. Tormasi, a prisoner incarcerated at the New Jersey State Prison in Trenton, claims that the District Court erred in granting summary judgment to Lucile Roach and Jawana Bethea on his Eighth Amendment claims that they were deliberately indifferent to his serious medical needs.[1] Tormasi also appeals the District Court's order denying his motion for reconsideration. For the following reasons, we will affirm the District Court's judgment with respect to Bethea, vacate with respect to Roach, and remand for further proceedings.

I.

Tormasi's Eighth Amendment claim is predicated on his assertion that Roach and Bethea – both employees of Correctional Medical Services, Inc. ("CMS"), the contractor that provided medical care at the prison – were deliberately indifferent to his optometry needs when they failed to ensure that he received prescription eye glasses in a reasonably timely fashion. On December 25, 2006, Tormasi submitted a medical request asking to see the eye doctor for "new glasses." He was scheduled for a mid-January appointment but did not learn of the appointment because he was temporarily housed in the close-custody unit. When he missed the appointment, Roach, the Supervisor of Special Clinics/LABS who worked in the optometry clinic, documented him as a no-show.

Eight months later, Tormasi filed a grievance regarding the fact that he had not yet seen the eye doctor. Bethea, a CMS Ombudsman responsible for handling and resolving

---

[1] Tormasi sued numerous defendants other than Roach and Bethea, and raised additional constitutional claims. As he only challenges the dismissal of his Eighth Amendment

2

inmate grievances, recommended that he submit another medical request, which Tormasi did on August 22, 2007.  Although he was referred for an appointment, no appointment was scheduled.  Tormasi submitted another grievance, to which Bethea responded that there had been a "mix up" and that he would be placed on the schedule.

On November 15, 2007, Tormasi submitted a letter to another CMS Ombudsman asking to see an eye doctor as soon as possible.  That letter was apparently forwarded to Bethea, who responded that "Ms. Roach [was] notified to schedule [the] long overdue exam!"  In December, Bethea prepared a memorandum in response to Tormasi's appeal of a grievance, in which she indicated that "[t]he scheduler was notified again concerning this issue.  Inmate Tormasi will be seen for an eye exam, as soon as scheduling permits for lockup clinic."  Tormasi wrote a letter to Bethea and Roach dated January 14, 2008, again requesting an appointment with the eye doctor.  This time, Tormasi indicated that the matter was "urgent" because he was experiencing dizziness and disorientation, and frequently fell or bumped into objects as a result of his "severely blurred" vision; he followed up with a similar letter in March.  Bethea responded by again contacting the "scheduler" while Roach forwarded the letters to her supervisors.

Tormasi was finally seen by an optometrist in April.  The doctor ordered new glasses for Tormasi but, for some unexplained reason, Tormasi never received them.  Over the course of the subsequent five months, Tormasi submitted additional grievances, a medical request, and several letters to Bethea and others regarding the issue.  Bethea contacted the appropriate "scheduler" and had several conversations with Tormasi in

claims against those two defendants on appeal, we will limit our discussion accordingly.

which she reported that she notified Roach about the problem. Tormasi was eventually rescheduled for an appointment and was treated by the eye doctor on September 5, 2008. In the meantime, as a result of his blurred vision, Tormasi lost his balance on two occasions and fell, injuring his back and dislocating his jaw. He finally received new glasses on September 26, 2008.[2] Shortly thereafter, Tormasi filed the present lawsuit.

Roach and Bethea eventually moved for summary judgment. Tormasi moved for an extension of time to respond and later filed a "status update" indicating that he would file his opposition shortly. Before he could do so, the District Court granted the motion due to insufficient evidence of deliberate indifference. Thereafter, Tormasi filed his opposition and a timely motion for reconsideration based on that opposition. The District Court defended the timing of its ruling, but nevertheless "reviewed [the] opposition papers in their entirety, and even after considering the arguments raised [therein,]" found reconsideration unwarranted. Tormasi timely appealed.

## II.

The District Court possessed jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1343. Our jurisdiction arises under 28 U.S.C. § 1291. Since Tormasi's appeal from the denial of his motion for reconsideration "brings up the underlying judgment for review," we will review the District Court's order granting summary judgment as well as its denial of the motion for reconsideration. N. River Ins. Co. v. CIGNA Reinsurance

---

[2] According to Tormasi, those glasses did not have the correct prescription. His efforts to get his prescription corrected are not at issue in this lawsuit.

4

Co., 52 F.3d 1194, 1218 (3d Cir. 1995). Our review of an order granting summary judgment is plenary.[3] Curley v. Klem, 298 F.3d 271, 276 (3d Cir. 2002).

To succeed on an Eighth Amendment claim based on delayed medical care, a plaintiff must establish that prison officials were deliberately indifferent to his serious medical needs. See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987). A medical needs is serious for Eighth Amendment purposes if (1) it "has been diagnosed by a physician as requiring treatment"; (2) it "is so obvious that a lay person would easily recognize the necessity for a doctor's attention"; or (3) "where the denial of treatment would result in the unnecessary and wanton infliction of pain or a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (quotations and citations omitted). A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Initially, the parties dispute whether Tormasi's optometry needs are "serious" for Eighth Amendment purposes. Although a "very slight visual impairment" does not

---

[3] In considering whether summary judgment was appropriate, we reviewed the entire record, including Tormasi's opposition. As the opposition fails to undermine the District Court's grant of summary judgment to Bethea, any error committed by the District Court in ruling when it did was harmless. Furthermore, we do not believe that the record supports the grant of summary judgment to Roach regardless of the opposition. Accordingly, the procedural issues Tormasi raises on appeal do not affect our outcome, and we need not address them.

constitute a serious medical need, see Borrelli v. Askey, 582 F. Supp. 512, 513 (E.D. Pa. 1984), aff'd without opinion, 751 F.2d 375 (3d Cir. 1984) (unpublished table decision), Tormasi's vision was significantly blurred, resulting in dizziness and imbalance that caused him to fall and walk into objects.  On one occasion, he fell due to his inability to see and dislocated his jaw.  Under such circumstances, a jury could find that Tormasi's optometry needs were serious.  See Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996) (inmate established serious medical need when he experienced double vision and loss of depth perception without prescription glasses such that he would fall or walk into objects).  Furthermore, we reject appellees' suggestion that Tormasi cannot establish the seriousness of his needs due to his failure to provide expert testimony.  Many of Tormasi's injuries – dizziness, light-headedness, falling and sustaining physical injury – can easily be understood by a layperson without the need for an expert.[4]  See Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987).

Turning to the issue of deliberate indifference, Bethea first learned of Tormasi's need to see the optometrist in August 2007.  From then until Tormasi's April 2008 appointment, Bethea responded to his letters, investigated his complaints, and, according to her interrogatory responses, repeatedly contacted the "scheduler" to resolve the issue.  When Bethea learned that Tormasi still had not received his eyeglasses, she again

---

[4] We note that expert testimony would likely be necessary to establish whether and to what extent the delay in care caused Tormasi's vision to further deteriorate.  Tormasi does not have expert testimony on that issue, apparently because he relied on the District Court's conclusion, made in connection with the denial of his motion to appoint an expert, that his injuries were not "beyond the understanding of laypersons."  The District Court may need to revisit this issue on remand.

contacted the "scheduler," repeatedly notified Roach of the problem, and visited Tormasi in his cell to discuss the situation. Tormasi contends that Bethea was deliberately indifferent because she took the same, essentially ineffective, course of action in response to his complaints. While it would have been nice if Bethea had been more proactive on Tormasi's behalf, her response was not so unreasonable that it could be viewed as deliberate indifference. See Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009) ("'[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk.'") (quoting Farmer, 511 U.S. at 844); see also Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 502-03 (1st Cir. 2011) (rejecting Eighth Amendment claim based on inmate's assertion that certain employees should have been more proactive in following up with his care).

Roach, however, presents a closer case. We believe, viewing all inferences in favor of Tormasi, that a reasonable jury would be able to infer deliberate indifference on her part. We agree with the District Court that the delay between Tormasi's December 2006 medical request and his August 2007 request, which resulted from a missed appointment, does not reflect deliberate indifference, even if Roach could have (or should have) tracked down Tormasi when he did not show up. Nevertheless, it is apparent that Roach was notified of the "long overdue" appointment in November 2007 and that, in early 2008, she was twice put on notice that Tormasi was experiencing serious consequences as a result of his blurry vision. When Tormasi failed to receive his glasses after the April 2008 appointment, Bethea repeatedly notified Roach of the problem. Although the record reflects that Roach forwarded Tormasi's January and March 2008

7

letters to her supervisors, there is no indication that she did anything in response to Bethea's repeated communications that Tormasi needed an appointment.[5]

As a supervisor in the optometry clinic, Roach's responsibilities included calling inmates into the unit to be seen by the optometrist based on the schedule. Regardless of whether Roach was responsible for actually scheduling optometry appointments – a fact that the parties dispute – the record reflects that she could recommend that an inmate be placed on the scheduling roster when special circumstances existed.[6] Yet there is no indication that Roach made any such recommendation, or did anything at all, in response to Bethea's notifications, which occurred after she was already aware that Tormasi was at risk of serious harm because he was falling and walking into objects as a result of his blurred vision. Additionally, the record provides no explanation whatsoever as to the causes of the "mix ups" and delays that prevented the scheduling of a simple eye examination. A reasonable jury could therefore infer that Roach ignored the situation to the point of deliberate indifference. See Jones v. Simek, 193 F.3d 485, 490-91 (7th Cir. 1999) (vacating summary judgment when doctor knew that inmate needed to see specialist for nerve damage but did not schedule appointment for six months and failed to provide pain medication in the interim); see also Farmer, 511 U.S. at 842 ("[I]t is enough that the official . . . failed to act despite his knowledge of a substantial risk of serious harm."). Furthermore, a jury could infer that, as the supervisor tasked with tracking

---

[5] In her interrogatory responses, Roach indicated that she did not recall any communications with Bethea on the subject.

[6] The record is surprisingly silent on the identity of the "scheduler" repeatedly referenced in Roach and Bethea's interrogatory responses and the particulars of how an optometry

8

inmates reporting for optometry appointments, Roach was aware as the months passed that Tormasi had not received the care that she knew he needed. While a finder of fact might conclude that Roach was guilty of negligence at most, we cannot say on the record before us that a reasonable fact-finder could not find deliberate indifference.[7] See Farrow v. West, 320 F.3d 1235, 1247 (11th Cir. 2003) (claim based on 15-month delay survived summary judgment "given [inmate's] recognized need for denture treatment, the nature of his continuing problems, the sheer length of the delay involved, and the lack of any reasonable explanation for the inordinate delay in this case").

We will therefore affirm the District Court's judgment as to Bethea but vacate as to Roach. Given our disposition, we will also vacate the denial of Tormasi's motions for partial summary judgment as moot. Despite Tormasi's request that we resolve those motions in his favor, we will leave them for the District Court to address in the first instance. We also decline to require the appointment of counsel on remand because Tormasi must first make his request to the District Court. In ruling on any such motion, the District Court will want to consider the impact that Tormasi's jaw dysfunction will have on his ability to present his case at trial. See Parham v. Johnson, 126 F.3d 454, 457-61 (3d Cir. 1997). Appellees' motion to file a supplemental appendix is granted.

appointment is scheduled at the prison.

[7] In their brief, Roach and Bethea focus on the fact that Tormasi has received more eye-related care in prison than he did before he was incarcerated. As Tormasi has been incarcerated for over a decade, we fail to see how that fact is relevant.