******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL BRAHAM *v.* RICHARD
NEWBOULD ET AL.
(AC 36235)

Alvord, Prescott and Mullins, Js.

*Argued May 27—officially released October 6, 2015*

(Appeal from Superior Court, judicial district of New
Haven, Zemetis, J. [motion to dismiss; judgment]; A.
Robinson, J. [motion for reargument].)

*Michael Braham*, self-represented, the appellant
(plaintiff).

*Zenobia G. Graham-Days*, assistant attorney general,
with whom, on the brief, was *George Jepsen*, attorney
general, for the appellees (defendants).

*Opinion*

ALVORD, J. The plaintiff, Michael Braham, appeals from the judgment of the trial court dismissing his action against the defendants, Richard Newbould, Richard Bush, Catherine Durato, Sheryl Estrom, and Valerie Boykins.[1] The plaintiff claims that the court improperly dismissed his claims against the defendants, employees of the Correctional Managed Health Care division of the University of Connecticut Health Center, on the basis of the doctrines of (1) qualified immunity and (2) sovereign immunity.[2] We affirm the judgment of the court.

The following facts are alleged in the plaintiff's complaint. The plaintiff, a sentenced inmate at the Cheshire Correctional Institution, wears eyeglasses because of extreme nearsightedness and severe astigmatism. At some point, one of the hinges on his eyeglasses broke, causing the eyeglasses to sit improperly on his face. The plaintiff requested to see the optometrist, was examined approximately three months later, and was issued an updated prescription on April 5, 2006. During the interim period, he experienced "difficulties," including blurred and distorted vision, eye strain, headaches, dizziness, loss of self-esteem, embarrassment and severe limitation in his ability to perform daily activities. At the time of the issuance of the prescription, Boykins, an office assistant, asked the plaintiff to sign an inmate fees form, which would authorize a three dollar deduction from his inmate account. The plaintiff signed the form. He did not, however, receive the eyeglasses at that time, because eyeglasses are made in a different location and shipped to the Cheshire Correctional Institution.

On May 12, 2006, Boykins informed the plaintiff that his eyeglasses had arrived and presented to the plaintiff another inmate fees form, which would authorize another three dollar deduction from his inmate account. The plaintiff refused to sign the form, stating that he already had been charged the three dollar co-pay. Boykins told him that there was a new rule pursuant to the Department of Correction's administrative directives. The plaintiff further questioned Boykins and showed her administrative directive 3.12 (5) (C).[3] Boykins told the plaintiff that according to Sheryl, identified by the plaintiff as Estrom, a nurse, he would have to pay in accordance with the new rule. The plaintiff again refused to sign the form, and he was sent back to his housing unit without the new eyeglasses.

The plaintiff thereafter filed an inmate grievance, in which he claimed that he should not have been charged the second three dollar fee. The grievance was rejected by Durato, a health service administrator. The plaintiff then appealed from Durato's decision. That appeal was rejected by Bush, also a health service administrator.

A later grievance also based on this claim filed by the plaintiff on February 17, 2007, was again denied, and the plaintiff's appeal was denied by Newbould, also a health service administrator. At some point following the denial by Newbould, the plaintiff agreed, "under duress, to end his physical pain," to pay the second three dollar fee. By that time, the eyeglasses could not be located, and the plaintiff ultimately received them several weeks later.

The following procedural history is also relevant. The plaintiff commenced the present action by way of a six count complaint on April 12, 2012. In his first count, the plaintiff asserted a claim under 42 U.S.C. § 1983,[4] alleging that the defendants had violated his rights under the eighth amendment to the United States constitution.[5] In the remaining counts, the plaintiff asserted claims of intentional infliction of emotional distress, negligent infliction of emotional distress, medical malpractice, negligence, and extortion and coercion. The plaintiff sued the defendants in both their individual and official capacities.[6]

On August 9, 2012, the defendants filed a motion to dismiss the action and a supporting memorandum of law, in which they argued that the court lacked subject matter jurisdiction because they were protected by the doctrines of statutory and sovereign immunity. The plaintiff filed an objection to the motion to dismiss and a supporting memorandum of law, in which he argued that neither sovereign nor statutory immunity barred his claims. He further argued that if the court were to find that he had not alleged facts sufficient to proceed with his claims, that he should be granted leave to amend his complaint.

On September 17, 2012, the court, *Zemetis*, *J.*, heard oral argument on the motion to dismiss. The court thereafter granted the defendants' motion to dismiss in a written memorandum of decision filed on December 26, 2012. In its memorandum, the court concluded that it lacked subject matter jurisdiction over the plaintiff's claims due to the application of sovereign, statutory, and qualified immunity. On January 9, 2013, the plaintiff filed a motion for reargument, in which he argued, inter alia, that the court erred in sua sponte considering the issue of qualified immunity without allowing him to be heard. He further argued that the court should have held an evidentiary hearing, at which he would have had the opportunity to demonstrate the severity of his eye condition. The motion was heard by the court, *A. Robinson*, *J.*, on April 7, 2014. At that time, the plaintiff requested permission to file additional briefing and also briefly mentioned his claim that Judge Zemetis improperly had found facts without holding an evidentiary hearing. The court then granted the plaintiff thirty days to brief the immunity issues, the state fifteen days to file a response, and ordered that oral argument be held

in sixty days. When asked by the court whether that was what the plaintiff was looking for, the plaintiff responded, "Sounds good, Your Honor."

The parties returned for oral argument before Judge Robinson on June 2, 2014. On that date, the plaintiff declined to argue the issue of qualified immunity, instead arguing primarily that the state should be required to brief and argue the issue first.[7] The plaintiff again argued that Judge Zemetis had erred in finding facts on an inadequate record. On September 8, 2014, the court issued an order stating that it "adopts the ruling and reasoning in the previous memorandum of decision, dismissing the case," in which it adopted the ruling and reasoning of Judge Zemetis' memorandum of decision.

The plaintiff filed the present appeal on October 16, 2013. The plaintiff appealed only from the judgment dismissing the action. He did not file an amended appeal from the court's September 8, 2014 ruling on the motion for reargument.

We begin by setting forth our standard of review. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . Moreover, [t]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . As we must in reviewing a motion to dismiss, we take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Citation omitted; internal quotation marks omitted.) *Sullins* v. *Rodriguez*, 281 Conn. 128, 131–32, 913 A.2d 415 (2007).

I

We first address the plaintiff's claim that the court improperly concluded that the defendants were entitled to qualified immunity from liability for the plaintiff's § 1983 claim against them in their individual capacities for money damages. He further claims that the court erred in sua sponte raising and considering qualified immunity. We disagree with the plaintiff's claims.

"Under federal law, the doctrine of qualified immunity shields officials from civil damages liability for their discretionary actions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. . . . Qualified immunity is an immunity from suit rather than a mere defense to liability and, therefore, protects officials from the burdens of litigation for the choices that they make in the course of their duties. . . . Thus, the United States Supreme Court has recognized qualified immunity for government officials [when] it [is] necessary to preserve

their ability to serve the public good or to ensure that talented candidates [are] not deterred by the threat of damages suits from entering public service. . . . Whether an official is entitled to qualified immunity presents a question of law that must be resolved de novo on appeal." (Citations omitted.) *Brooks* v. *Sweeney*, 299 Conn. 196, 216, 9 A.3d 347 (2010).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct. . . . We recently reaffirmed that lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." (Citation omitted.) *Ashcroft* v. *al-Kidd*, U.S. , 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011); see also *Traylor* v. *Gerratana*, 148 Conn. App. 605, 612, 88 A.3d 552, cert. denied, 312 Conn. 901, 902, 91 A.3d 908, 112 A.3d 778, cert. denied, U.S. , 135 S. Ct. 444, 190 L. Ed. 2d 336 (2014). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Brooks* v. *Sweeney*, supra, 299 Conn. 217.

The basis of the plaintiff's § 1983 claim is that the defendants' failure to provide him with his new eyeglasses constituted deliberate indifference to his serious medical need in violation of the eighth amendment to the United States constitution. "The [e]ighth [a]mendment prohibits the infliction of cruel and unusual punishments. . . . This includes punishments that involve the unnecessary and wanton infliction of pain. . . . In order to establish an [e]ighth [a]mendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to [his] serious medical needs. . . . The standard of deliberate indifference includes both subjective and objective components. First, the alleged deprivation must be, in objective terms, sufficiently serious. . . . Second, the [government official] must act with a sufficiently culpable state of mind. . . . An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . Thus, an official's failure to alleviate a significant risk that he should have perceived but did not [does not violate the eighth amendment]." (Citations omitted; internal quotation marks omitted.) *Faraday* v. *Commissioner of Correction*, 288 Conn. 326, 338–39, 952 A.2d 764 (2008).

We begin our analysis by determining whether the facts alleged by the plaintiff in his complaint state a violation of the eighth amendment. See *Morgan* v. *Bubar*, 115 Conn. App. 603, 626, 975 A.2d 59 (2009). In

his first count, the plaintiff alleged that "[e]ach of the . . . defendants knew or reasonably should have known that [the plaintiff's] prescription eyeglasses was a serious medical need for him." He alleged that "[t]he thickness of [the plaintiff's] eyeglass lenses was such that a layperson would recognize his serious medical need to wear them." He further alleged, inter alia, that the defendants, in initiating a policy that involved assessing two co-pay fees for each eyeglass prescription, interfered with his medical care and exhibited deliberate indifference to his serious medical need. The plaintiff alleged that the acts and omissions of the defendants "caused [him] to be subjected to . . . unnecessary and wanton infliction of pain and emotional distress," which he characterized as "difficulties," including "blurred and distorted vision, eye strain, headaches, dizziness, loss of self-esteem, embarrassment, and . . . [severe] limit[ation] in his ability to perform his normal daily activities."

In support of his claim that the defendants' actions constituted a violation of the eighth amendment, the plaintiff cites *Koehl* v. *Dalsheim*, 85 F.3d 86, 87 (2d Cir. 1996), a case in which an inmate alleged that correction officers had violated the eighth amendment by confiscating his eyeglasses despite his having received a doctor's permission to wear them. The eyeglasses were "specially prescribed, tinted eye-glasses, fitted with what [the plaintiff] described as a prism . . . ." Id. The United States Court of Appeals for the Second Circuit noted that the plaintiff had "alleged that he required the prescribed eye-glasses to avoid double vision and the loss of depth perception that resulted from a prior head injury." Id., 88. He further had alleged that "[a]s a result of the confiscation of his glasses and the subsequent denial of medical treatment, [he] ha[d] suffered significant consequences," specifically, that "[h]is left eye, which had shifted as a result of his head injury, has now shifted fully into the corner of the socket and is almost sightless, and he has experienced headaches." Id., 87. The court noted that "[s]uch visual deficiencies can readily cause a person to fall or walk into objects, and [the plaintiff] alleged that he has experienced such occurrences, and has suffered injuries as a consequence." Id., 88. The court concluded that the plaintiff had made sufficient allegations, including that his medical need was serious and that the correction officers were aware of his need, such that his claims would survive a motion to dismiss.[8] Id.; see also *Tormasi* v. *Hayman*, 452 Fed. Appx. 203, 206 (3d Cir. 2011) (court concluded that a jury could find that a plaintiff's medical needs were serious, considering that his "vision was significantly blurred, resulting in dizziness and imbalance that caused him to fall and walk into objects. On one occasion, he fell due to his inability to see and dislocated his jaw.").

Although a plaintiff conceivably can allege a serious

deprivation on the basis of failure to provide prescription eyeglasses, as in *Koehl*, the plaintiff's allegations in the present case are inadequate, as noted by the trial court. First, the plaintiff in the present case alleged neither severe pain nor deterioration of his vision as a result of the defendants' failure to provide him with the new eyeglasses.[9] Second, the plaintiff's complaint suggested that he was prompted to seek "replacement glasses" after one of the hinges on his eyeglasses broke, "causing them to set on his face at an improper angle." Accordingly, the trial court stated that "[a]lthough this was probably inconvenient, the plaintiff has not alleged that the defendants' failure to provide new glasses left him totally without glasses, only with glasses with a damaged hinge."

Noting that medical conditions may be of "varying severity," the Second Circuit has explained that "[t]he standard for [e]ighth [a]mendment violations contemplates a condition of urgency that may result in degeneration or extreme pain." (Internal quotation marks omitted.) *Chance* v. *Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); see also *Faraday* v. *Commissioner of Correction*, supra, 288 Conn. 339 n.12. Our review of the plaintiff's complaint and the exhibits attached thereto leads us to conclude that the facts alleged do not state a deprivation sufficiently serious to constitute a violation of the eighth amendment. Cf. *Chance* v. *Armstrong*, supra, 703 (plaintiff had alleged sufficiently serious condition, where as a result of inadequate dental care, he alleged to have "suffered extreme pain, his teeth deteriorated, and he has been unable to eat properly").[10]

Because the facts alleged by the plaintiff do not state a violation of the eighth amendment, we conclude that the trial court properly determined that the defendants are entitled to qualified immunity.[11] Accordingly, the court properly dismissed the plaintiff's federal law claims against the defendants in their individual capacities.[12] See *Traylor* v. *Gerratana*, supra, 148 Conn. App. 612 (affirming judgment of dismissal, concluding that "[q]ualified immunity bars the plaintiff's [§ 1983] claims because he failed to establish that the legislative defendants violated a statutory or constitutional right or that their actions were not objectively reasonable"); see also *Tuchman* v. *State*, 89 Conn. App. 745, 763, 878 A.2d 384 (affirming judgment of dismissal after concluding, inter alia, that "the court properly determined that [the defendant] was entitled to qualified immunity as to the plaintiffs' federal constitutional claims"), cert. denied, 275 Conn. 920, 883 A.2d 1252 (2005).

## II

The plaintiff next claims that the court erred in dismissing his official capacity claims against the defendants for declaratory and injunctive relief. Specifically, the plaintiff argues that sovereign immunity bars neither a § 1983 action brought against state officials in their

official capacities, nor an action on the basis of a substantial claim that a state official violated the plaintiff's constitutional rights. We address each claim in turn and conclude that the court properly dismissed the plaintiff's claims for declaratory and injunctive relief.

A

We first turn to the plaintiff's § 1983 claim, alleged in the first count of his complaint, against the defendants in their official capacities for declaratory and injunctive relief. The defendants assert that sovereign immunity bars this claim. We disagree, but nonetheless conclude that the court properly dismissed the § 1983 claim.

Pursuant to § 1983, the plaintiff has brought claims against state officials in their individual capacities for damages and in their official capacities for injunctive relief. We already have concluded in part I of this opinion that the defendants are entitled to qualified immunity from the plaintiff's § 1983 claim seeking money damages. We now consider whether the plaintiff is entitled, pursuant to § 1983, to declaratory and injunctive relief against the defendants in their official capacities.

We begin by noting that a state "is not a person within the meaning of § 1983 and thus is not subject to suit under § 1983 in either federal court or state court." (Internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 311, 828 A.2d 549 (2003). A state official sued in his official capacity for monetary damages is also not subject to suit under § 1983. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself." (Citation omitted.) *Will* v. *Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). The United States Supreme Court in *Will* recognized, however, on the basis of its prior decisions in *Kentucky* v. *Graham*, 473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985), and *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." (Internal quotation marks omitted.) *Will* v. *Michigan Dept. of State Police*, supra, 71 n.10.

This exception applies only to prospective injunctive relief. Id. The plaintiff, in his § 1983 claim alleging that the defendants violated the eighth amendment, claimed that he was deprived of his right to be free from cruel and unusual punishment when his glasses were withheld from him in response to his refusal to sign the second inmate fees form. In his complaint, the plaintiff stated that he received his eyeglasses sometime after March, 2007, and he confirmed, during oral argument

before this court, that he had received the eyeglasses. We therefore conclude that there is no practical prospective injunctive relief available to the plaintiff with respect to his eighth amendment claim.[13] Accordingly, that claim was properly dismissed.

## B

We next turn to the plaintiff's state law claims, contained in counts two through six of his complaint, for declaratory and injunctive relief against the defendants in their official capacities. The plaintiff alleged intentional infliction of emotional distress, negligent infliction of emotional distress, medical malpractice, negligence, and extortion and coercion. We conclude that the court properly dismissed these claims.

"[W]e have long recognized the validity of the common-law principle that the state cannot be sued without its consent . . . . We have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . The doctrine of sovereign immunity protects the state, not only from ultimate liability for alleged wrongs, but also from being required to litigate whether it is so liable." (Citation omitted; internal quotation marks omitted.) *Manifold* v. *Ragaglia*, 94 Conn. App. 103, 114–15, 891 A.2d 106 (2006).

"Our Supreme Court has recognized three exceptions to sovereign immunity: (1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity . . . (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights . . . and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." (Internal quotation marks omitted.) *Traylor* v. *Gerratana*, supra, 148 Conn. App. 610. "In the absence of a proper factual basis in the complaint to support the applicability of these exceptions, the granting of a motion to dismiss on sovereign immunity grounds is proper." (Internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 350, 977 A.2d 636 (2009).

The plaintiff claims that the defendants acted beyond their authority and violated his constitutional rights "in withholding [his] eyeglasses for his refusing to pay the unauthorized and illegal co-pay fee . . . ."[14] "The only exceptions to sovereign immunity that would apply to claims alleging constitutional violations and conduct in excess of statutory authority are the second and third, which require that the plaintiff's claim be *substantial*." (Emphasis added; internal quotation marks omitted.)

*Traylor* v. *Gerratana*, supra, 148 Conn. App. 610. We conclude that the plaintiff's claims are barred by sovereign immunity because they do not satisfy either of these exceptions.

"For a claim made pursuant to the second exception, complaining of unconstitutional acts, we require that [t]he allegations of such a complaint and the factual underpinnings if placed in issue, must *clearly demonstrate* an incursion upon constitutionally protected interests." (Emphasis added.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, supra, 293 Conn. 350. As we have concluded in part I of this opinion, the plaintiff has failed to allege a deprivation sufficiently serious to constitute a violation of the eighth amendment, the constitutional provision at issue.[15] Accordingly, the second exception does not apply.

"For a claim under the third exception, the plaintiffs must do more than allege that the defendants' conduct was in excess of their statutory authority; they also must allege or otherwise establish facts that reasonably support those allegations." (Internal quotation marks omitted.) Id. The plaintiff claims that pursuant to § 18-85a-3 of the Regulations of Connecticut State Agencies, "the plaintiff is entitled to prescription eyeglasses upon assessment of one, three dollar co-pay fee . . . ."[16] Section 18-85a-3, which the plaintiff attached to his complaint, states that "[t]he inmate's responsibility to pay for the use of services and programs shall be in accordance with the following schedule . . . (3) Eyeglasses—$3.00 per prescription." The court, considering the allegations of the complaint in their most favorable light and also considering the exhibits attached to the complaint, inferred that "the plaintiff was not wrongfully charged twice for his prescription, but rather correctly charged one three dollar fee for the optometrist's visit and a separate three dollar fee for the eyeglass prescription."[17] We agree with the court and therefore conclude that the plaintiff did not allege facts sufficient to bring his claim within the exception for conduct in excess of the defendants' statutory authority.

The plaintiff has clearly fallen short of meeting the requirement that his claim be " 'substantial.' " *Traylor* v. *Gerratana*, supra, 148 Conn. App. 610. Accordingly, the court properly dismissed the state law claims for declaratory and injunctive relief against the defendants in their official capacities.

### III

Last, the plaintiff claims that he should have been granted leave to amend his complaint. There is nothing in the record to suggest that the plaintiff filed a request for leave to amend his complaint, in accordance with Practice Book § 10-60.[18] His statement in his opposition to the defendants' motion to dismiss, which was that

"if this court disagrees [that he sufficiently had pleaded his causes of action], the plaintiff should be granted leave to amend the complaint in this action," cannot be considered a request to amend. See *Pekera* v. *Purpora*, 273 Conn. 348, 356–57, 869 A.2d 1210 (2005) ("The plaintiffs' reference to a possible future amendment in their reply memorandum thus cannot be considered a request to amend under the applicable rules of practice. In the absence of a properly filed request to amend, the trial court was not called upon to exercise its discretion, and it correctly declined, as a matter of law, to consider the purported amendment." [Footnote omitted.]). More importantly, "[o]nce a party has raised an issue of subject matter jurisdiction, the court must immediately act on it before proceeding to any other action in the case." (Internal quotation marks omitted.) *North Star Contracting Corp.* v. *Albright*, 156 Conn. App. 311, 315 n.5, 112 A.3d 216 (2015). Thus, the plaintiff's claim that he should have been granted leave to amend his complaint fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In this opinion, we refer to the individual defendants collectively as the defendants and individually by name where appropriate.

[2] The plaintiff's complaint contained six counts. Count one was brought pursuant to 42 U.S.C. § 1983 and alleged violation of his eighth amendment right to be free from cruel and unusual punishment. Counts two through six alleged various state law claims, including intentional infliction of emotional distress, negligent infliction of emotional distress, medical malpractice, negligence, and extortion and coercion. The plaintiff brought his federal law claims against the defendants for damages in their individual capacities and for declaratory and injunctive relief in their official capacities. The plaintiff asserted his state law and tort claims against the defendants in their individual and official capacities for both money damages and declaratory and injunctive relief.

A review of the plaintiff's appellate brief reveals that the plaintiff does not challenge the court's treatment of his state law claims against the defendants in their individual capacities or against the defendants in their official capacities for money damages. We, therefore, deem these claims abandoned for purposes of this appeal.

What remains, therefore, are his claims for declaratory and injunctive relief under federal and state law, and his claims for damages under federal law.

[3] Administrative directive 3.12 (5) (C) provides: "Eyeglasses. A sentenced inmate shall be charged three dollars ($3.00) per prescription. Attachment A, Inmate Fees Form shall be completed after the prescription has been written. If an inmate refuses to sign the Inmate Fees Form, a notation to the effect shall be made, and the form signed by Health Services staff. The completed Attachment A, Inmate Fees Form shall be forwarded to the Inmate Trust Fund Office on a daily basis."

[4] Section 1983 of title 42 of the United States Code provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

[5] The eighth amendment to the United States constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[6] As noted in footnote 2 of this opinion, the plaintiff brought his federal law claims against the defendants for damages in their individual capacities and for declaratory and injunctive relief in their official capacities. The plaintiff asserted his state law and tort claims against the defendants in their individual and official capacities.

[7] The plaintiff did offer, however, to answer any questions that the court might have regarding qualified immunity.

[8] With regard to the officers' subjective awareness, the court further noted that a comment made by one of the officers supported the conclusion that dismissal was inappropriate. *Koehl* v. *Dalsheim*, supra, 85 F.3d 87. The court referenced the plaintiff's allegation that after he had informed one of the officers that the doctor's records would document his permission to wear the glasses, the officer had allegedly replied, "I don't give a S_t [sic], I'm taking the glasses . . . ." (Internal quotation marks omitted.) Id.

[9] See *Bellah* v. *McGinnis*, 1994 U.S. App. LEXIS 33541, *4 (6th Cir. November 23, 1994) (decision without published opinion, 42 F.3d 1388 [6th Cir. 1994] (dismissal of eighth amendment claim on basis of thirteen month delay in receiving replacement eyeglasses proper where visual acuity had changed only slightly and delay in filling prescription did not damage plaintiff's vision); *Muhammad* v. *King*, 1994 U.S. App. LEXIS 8958, *3–*4 (8th Cir. April 28, 1994) (decision without published opinion, 21 F.3d 432 [8th Cir. 1994] (affirming summary judgment rendered in favor of defendants where plaintiff did not prove the delay in providing him with eyeglasses "created an acute or escalating situation").

[10] We further conclude, as the trial court did, that the facts as alleged by the plaintiff do not satisfy the second prong of the eighth amendment analysis, which requires a showing that the defendants acted with the requisite deliberate indifference. "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. . . . This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (Citation omitted.) *Salahuddin* v. *Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

Although he alleged, broadly, that the defendants were deliberately indifferent to his serious medical needs, the plaintiff has failed to allege facts that rise to the level of deliberate indifference. He does not provide factual allegations that the defendants were aware of a substantial risk that he would be subject to serious harm if they failed to provide him with his new eyeglasses.

[11] The plaintiff additionally claims that he "has been prejudiced by the court's failure to hold an evidentiary hearing . . . ." The cases cited by the plaintiff in support of his claim that an evidentiary hearing was required both involve a court's dismissal of an action in which the parties had disputed critical and material issues of fact, either by their legal memoranda or by affidavits. See *Bradley's Appeal from Probate*, 19 Conn. App. 456, 465–67, 563 A.2d 1358 (1989); *Garden Mutual Benefit Assn.* v. *Levy*, 37 Conn. Supp. 790, 792, 437 A.2d 141 (1981). In contrast, the defendants in the present case did not dispute the plaintiff's factual allegations. "[I]n the absence of any disputed facts pertaining to jurisdiction, a court is not obligated to hold an evidentiary hearing before dismissing an action for lack of jurisdiction." (Internal quotation marks omitted.) *Lawrence* v. *Weiner*, 154 Conn. App. 592, 603, 106 A.3d 963, cert. denied, 315 Conn. 925, 109 A.3d 921 (2015).

Moreover, the plaintiff did not argue that such a hearing was necessary either in his opposition to the defendants' motion to dismiss or during the September 17, 2012 hearing on that motion. The issue was thus not raised before the court prior to the dismissal of the plaintiff's complaint. The plaintiff first raised this argument in his January 9, 2013 motion for reargument. The present appeal, however, was taken only from the judgment of dismissal; the plaintiff did not file an amended appeal challenging the court's ruling on the motion for reargument, as required by Practice Book § 61-9. Accordingly, we decline to review the plaintiff's claim that the court erred in refusing his request for an evidentiary hearing. See *Jewett* v. *Jewett*, 265 Conn. 669, 673 n.4, 830 A.2d 193 (2003).

[12] The plaintiff also claims, as he did in his motion for reargument, that the court erred in considering the issue of qualified immunity sua sponte without affording him the right to be heard on that issue. Our review of the record leads us to conclude that the plaintiff was afforded sufficient opportunity to be heard.

First, after filing his motion for reargument, the plaintiff received the opportunity to file additional briefing on the issue of qualified immunity and on two occasions was given the opportunity to be heard at oral argument. On both dates set for oral argument, the plaintiff declined the court's invitation to present an argument as to qualified immunity. Instead, at the April, 2014 hearing, he requested to file additional briefing, and at the June, 2014 hearing, his principal argument was that the state should be required to brief and argue the issue first.

Second, the court, in its September, 2014 order, adopted Judge Zemetis' memorandum of decision, after stating that the plaintiff had been "afforded an additional opportunity to address issues he claimed were improperly raised in [Judge Zemetis'] memorandum of decision . . . ." The plaintiff has not filed an amended appeal challenging the September, 2014 order and, thus, to the extent that he is claiming deficiency in the April, 2014 or June, 2014 hearings that resulted in the September, 2014 order, we decline to review such claims.

We also decline to review the plaintiff's claim, first raised in his reply brief, that the trial court failed to follow the rules of practice and that he had not waived his right to compel compliance with the rules of practice. "It is well established that [c]laims . . . are unreviewable when raised for the first time in a reply brief." (Internal quotation marks omitted.) *Hane* v. *Hane*, 158 Conn. App. 167, 175 n.11,      A.3d      (2015).

[13] To the extent that the plaintiff is relying on § 1983 to vindicate constitutional or statutory rights afforded by the state, § 1983 is not the proper vehicle, as that statute provides for the enforcement of *federal* rights. See *Blessing* v. *Freestone*, 520 U.S. 329, 340, 117 S. Ct. 1353, 137 L. Ed. 2d 569 (1997) ("[i]n order to seek redress through § 1983 . . . a plaintiff must assert the violation of a federal right" [emphasis omitted]).

[14] In support of his eighth amendment claim, the plaintiff directed this court to additional authority at oral argument. The cases noted by the plaintiff do not support his claim; there is some relevance provided by *Monmouth County Correctional Institutional Inmates* v. *Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006, 108 S. Ct. 1731, 100 L. Ed. 2d 195 (1988), in which the United States Court of Appeals for the Third Circuit stated that prison officials may not "condition provision of needed medical services on the inmate's ability or willingness to pay." The Third Circuit later clarified its statement: "It is . . . apparent that the statement in *Lanzaro* refers to the withholding of essential medical treatment from an inmate who refuses to agree to pay *because of indigency*." (Emphasis added.) *Reynolds* v. *Wagner*, 128 F.3d 166, 174–75 (3d Cir. 1997). The court further explained that "the deliberate indifference standard of *Estelle* [v. *Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)] does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." *Reynolds* v. *Wagner*, supra, 175. The plaintiff in the present case has not alleged that he refused to pay the co-pay because of indigency.

[15] In his first count, alleging a violation of the eighth amendment, the plaintiff additionally alleged that "[t]he defendants' actions caused the plaintiff to be physically injured in violation of the fourth . . . and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution." The plaintiff claims on appeal that he "pleaded facts sufficient to recover on both substantive and procedural due process grounds under the fourth and fourteenth amendments," and under the Connecticut constitution.

"We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Clelford* v. *Bristol*, 150 Conn. App. 229, 233, 90 A.3d 998 (2014); see also *Parnoff* v. *Mooney*, 132 Conn. App. 512, 518, 35 A.3d 283 (2011) ("[i]t is not the role of this court to undertake the legal research and analyze the facts in support of a claim or argument when it has not been briefed adequately" [internal quotation marks omitted]).

The plaintiff provided inadequate analysis of his due process and Connecticut constitutional claims. He did not, in his complaint, identify the nature of the right under the Connecticut constitution that he was alleging the defendants had violated. In his appellate brief, the plaintiff makes conclusory statements that he pleaded facts sufficient to recover on those grounds and that his claims are not barred by immunity. He fails, however, to identify the facts he claims to have alleged in support of these constitutional claims, and his citation to case law lacks an application to the facts of his case. Accordingly, we decline to review these claims.

[16] The plaintiff further claims that Boykins acted in excess of her authority pursuant to administrative directive 3.12, which states that "[i]f an inmate refuses to sign the Inmate Fees Form, a notation to that effect shall be made, and the form signed by Health Services staff . . . ." In the trial court,

the plaintiff argued that "they could have still processed my fees form and assessed me that additional three dollars, but I should have been issued my glasses. They didn't do that." We note that considering the plaintiff's interpretation of § 18-85a-3, which is that a second co-pay was prohibited, processing the second three dollar co-pay against his wishes would not have resolved his complaint.

[17] The court further explained that according to the plaintiff's allegations, "the plaintiff signed one inmate fee form on April 5, 2006, the day the plaintiff saw the optometrist, and was requested to sign another on May 12, 2006, when he attempted to pick up his prescription." The court concluded that "[a] reading of § 18-85a-3 shows that an inmate is to be charged one, three dollar fee for an inmate initiated medical visit and an additional three dollar fee for a pair of eyeglasses." The court's conclusion was further supported by reference to the first three dollar fee form, which was attached to the plaintiff's complaint and included a notation reading "eye doctor" next to the line stating, "sick call."

[18] Practice Book § 10-60 (a) provides: "Except as provided in Section 10-66, a party may amend his or her pleadings or other parts of the record or proceedings at any time subsequent to that stated in the preceding section in the following manner:

"(1) By order of judicial authority; or

"(2) By written consent of the adverse party; or

"(3) By filing a request for leave to file such amendment, with the amendment appended, after service upon each party as provided by Sections 10-12 through 10-17, and with proof of service endorsed thereon. If no objection thereto has been filed by any party within fifteen days from the date of the filing of said request, the amendment shall be deemed to have been filed by consent of the adverse party. If an opposing party shall have objection to any part of such request or the amendment appended thereto, such objection in writing specifying the particular paragraph or paragraphs to which there is objection and the reasons therefor, shall, after service upon each party as provided by Sections 10-12 through 10-17 and with proof of service endorsed thereon, be filed with the clerk within the time specified above and placed upon the next short calendar list."